UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

JAMES D. SHERRILL # 15381[1]  )
                              )
v.                            )
                              )   NO. 2:10-cv-240
CHRIS MATHES, Sheriff of Carter County, )   *Greer/Inman*
County, Tennessee; RON STREET, )
Chief Deputy; BOBBY HUFFMAN, Jail )
Administrator; and DR. DANIEL PAUL )

### **MEMORANDUM and ORDER**

*Pro se* prisoner James D. Sherrill brings this civil rights suit for injunctive and monetary relief under 42 U.S.C. § 1983, alleging that he was subjected to unconstitutional conditions and treatment while housed in the Carter County Detention Center ("CCDC"). The defendants are Carter County Sheriff Chris Mathes, Carter County Chief Deputy Sheriff Ron Street, CCDC Jail Administrator Bobby Huffman, and Dr. Daniel Paul, the CCDC physician.

### **I. The Filing Fee**

Although plaintiff's application to proceed *in forma pauperis* reflects that he has a negative balance in his inmate trust account, the Prison Litigation Reform Act, codified in part in 28 U.S.C. § 1915, makes prisoners responsible for the filing fee the instant a civil action is filed. *See McGore v. Wrigglesworth*, 114 F.3d 601, 605 (6th Cir. 1997), *overruled on other*

---

[1] Despite the fact that the caption of the complaint also lists Jaimie A. Griffey and Joshua W. Ritchie as plaintiffs, the Court does not consider them to be parties to this action since they did not sign the pleadings or apply for pauper status, or alternatively, pay the filing fee. The same is true of the additional eight prisoners whose names are printed at the bottom of the handwritten "statement" attached to the complaint.

*grounds by Jones v. Bock*, 549 U.S. 199 (2007); *In re Prison Litigation Reform Act*, 105 F.3d 1131 (6th Cir. 1997) ("All prisoners while incarcerated must now pay the required filing fees and costs."). Plaintiff therefore is A**SSESSED** the full filing fee of three-hundred, fifty dollars ($350.00).

The custodian of plaintiff's inmate trust account at the institution where he now resides, (Doc. 5, Notice of Change of Address), is **DIRECTED** to submit to the Clerk of Court, twenty percent (20%) of plaintiff's preceding monthly income credited to the account, but only when the amount in the account exceeds ten dollars ($10), until the full $350 fee has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk is **DIRECTED** to mail a copy of this Order to the custodian of inmate trust accounts at plaintiff's current place of confinement to ensure compliance with the assessment procedures outlined herein. All payments should be sent to: Clerk's Office, USDC; 220 W. Depot Street, Suite 200; Greeneville, TN 37743.

## II. Screening Procedure

The Court now must screen the complaint to determine whether it should be dismissed as frivolous, malicious or for failure to state a claim or because monetary damages are sought from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A. In performing this task, the Court bears in mind that the pleadings of *pro se* litigants must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Still, a complaint which contains only "[t]hreadbare recitals of the elements of

2

Case 2:10-cv-00240   Document 6   Filed 12/04/12   Page 2 of 11   PageID #: 24

a cause of action, supported by mere conclusory statements" is insufficient to state a claim for relief. *Ashcroft v. Iqbal*, 552 U.S. 662, 678 (2009). Instead, the pleading must encompass "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," so as to clothe the claim in "facial plausibility." *Id*.

### III. Discussion

#### A. *Claims for Injunctive Relief*

As noted, plaintiff seeks injunctive relief in his complaint. However, the jurisdiction of federal courts is limited to "cases and controversies." U.S. CONST. art. III, § 2, cl.1. A case becomes moot "when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome." *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Here, plaintiff requests injunctive relief from the alleged wrongful treatment and conditions to which he was subjected at the CCDC, but he now has been transferred to a different facility. Clearly, improving the complained of conditions in the CCDC would not benefit plaintiff in the slightest because he is no longer confined there and does not indicate that he expects to be imprisoned in the CCDC in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (noting that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

These claims are **DENIED** as **MOOT**.

#### B. *Claims Based on Respondeat Superior/Supervisory Liability*

3

Plaintiff explains in his pleading that he has named Sheriff Mathes as a defendant because he has the power to make amends, Chief Deputy Street and CCDC Administrator Huffman because they are in the chain of command on the grievance procedure, and Dr. Paul because he is over the medical staff. Yet, plaintiff has not asserted that any defendant directly participated in the alleged constitutional violations. If plaintiff is predicating these claims on respondeat superior, which arises "'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm," *Santiago v. Warminster Tp.*, 629 F.3d 121, 128-129 (3d Cir. 2010) (quoting *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 692 (1978)), he cannot succeed because respondeat superior is not a valid theory for recovery under § 1983. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell*, 436 U.S. at 691; *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

A supervisor, however, can incur liability under § 1983 where a plaintiff shows "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Taylor v. Michigan Dept. of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995) (quoting *Bellamy*, 729 F.2d at 421). Here, there has been no showing that defendants committed any actual acts or had actual knowledge of the alleged deprivations. The fact that plaintiff filed a grievance is not enough to impose supervisory liability on defendants. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

Thus, Plaintiff has failed to state a viable claim against any defendant based on respondeat superior or on supervisory liability.

4

*C. Living Conditions Claims*

As asserted in a conclusory fashion in the form complaint but more fully developed in the handwritten attachment, (Doc. 2), plaintiff alleges two main claims for relief, the first of which is that he has been subjected to cruel and unusual punishment by being exposed to unsanitary housing conditions in the CCDC.

More specifically, plaintiff contends that, when he was incarcerated on August 10, 2010,[2] he was forced to sleep on the floor and denied a towel, wash cloth, and sheet, until family members could either deposit money to his inmate trust account to enable him to buy those items or provide him with those linens. Lunch, according to plaintiff, operates on an honor system whereby an inmate is supposed to take one sandwich and return to his cell. If an inmate takes more than a single sandwich, then it is left to the discretion of the officer on duty as to whether to punish all inmates for the misdeeds of one by withholding sandwiches from the entire block of inmates.

Plaintiff also maintains that opportunities for recreation and sunlight are limited, as he has been taken to the roof for recreation three times in two and a half months for 30- minute to one-hour periods of time. The deprivation of sunlight has caused plaintiff's skin to become oily and bumpy and the lack of fresh air subjects the inmates to headaches and sinus infections.

Toilet paper is also rationed. Each inmate is supplied one roll per week, which can become problematic for those inmates with sinus problems who are forced to use toilet paper

---

[2] Plaintiff was transferred to another detention facility on November 19, 2010, (Doc. 5, Notice of Address Change).

in place of tissues. At times, inmates are forced to tear up their uniforms to be able to use the bathroom. Some guards, though not all, will provide an extra roll of toilet paper upon request.

When the facility was remodeled, sinks and commodes were removed from the cells and inmates in all blocks must now share a single commode, sink, and shower. A spray bottle of disinfectant is given daily, but plaintiff has only had one bottle in the last two weeks and cannot disinfect the commode or clean the sink. Plaintiff suspects that the disinfectant is actually room deodorizer.

*1. The Law*

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.'" *Spencer v. Bouchard*, 449 F.3d 721, 727-28 (6th Cir. 2006) (citations and internal quotation marks omitted). A prisoner states a claim of cruel and unusual punishment under the Eighth Amendment by alleging that prison officials have, with deliberate indifference, exposed him to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling*, 509 U.S. at 35. An Eighth Amendment claim has both an objective and a subjective component. The objective prong requires a prisoner to show that he suffered an objective, sufficiently serious deprivation and the subjective prong requires him

6

to show that a prison official was deliberately indifferent to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 833-34, 42 (1994).

With respect to living conditions, the objective aspect of the test is met where plaintiff shows that "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36. The length of time that an inmate is subjected to certain conditions of confinement is relevant in determining whether the confinement satisfies constitutional standards. *See Bell v. Wolfish*, 441 U.S. 520, 543 (1979) ("Our conclusion [that double-bunking is constitutionally permissible] is further buttressed by the detainees' length of stay . . . . Nearly all of the detainees are released within sixty days."); *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months.").

A plaintiff establishes deliberate indifference by showing that defendants were aware of facts from which they could infer that such a risk existed and that they actually drew that inference. *Farmer*, 511 U.S. at 837.

*2. Analysis*

Plaintiff himself acknowledges that he has not supplied specific dates to show the duration of the alleged wrongful conditions, (Doc. 2, Compl. at 4). Thus, the majority of the claims cannot be examined in light of the length of time to which plaintiff was exposed to the challenged condition. At any rate, some of the complained of conditions, such as the denial of sheets, towels, and wash cloths upon plaintiff's entry into the CCDC, may have been

7

temporary, since plaintiff's contentions impliedly suggest that family members arranged for him to be provided with those items. *Gilland v. Owens*, 718 F.Supp. 665, 685 (W.D.Tenn. 1989) ("Short term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like do not rise to the level of a constitutional violation.").

Furthermore, most of the claims are stated as general claims on behalf of other inmates without any contentions to show that plaintiff in particular sustained any harm by his exposure to the condition. This is significant since an inmate has standing to assert his own rights, not those of other prisoners. *See Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (standing is lacking absent an allegation of an injury in fact or a harm that is "actual or imminent, not conjectural or hypothetical"). The Court lacks jurisdiction over claims advanced on behalf of other inmates, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (party invoking federal jurisdiction must establish "the irreducible constitutional minimum of standing"), and **DISMISSES** these claims for want of jurisdiction.

A few claims are connected to plaintiff individually, including the contentions that he had to sleep on the floor, was taken for outdoor exercise three times in 2 ½ months, denied linens, and received one bottle of disinfectant in two weeks. But again, plaintiff has not alleged that his exposure to these conditions resulted in any injury specific to himself. For example, plaintiff maintains that limiting inmates' access to outdoor exercise and sunlight "causes all of us to have" oily, bumpy, skin, sinus infections, and headaches, (Doc. 2, Compl. at 6).

8

But assuming that plaintiff has alleged that he personally sustained these physical maladies and that he has also alleged the "extreme deprivations [which] are required to make out a conditions-of-confinement claim," *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992), he has offered no contentions of fact tying any of the defendants to the alleged unconstitutional conditions. Without some factual nexus between the alleged improper conditions and each defendant, there is nothing from which to infer the state-of-mind element of an Eighth Amendment claim. Absent any contention that these defendants knew about and disregarded a substantially serious risk posed by plaintiff's housing conditions, he has failed to satisfy the "deliberate indifference" element of an Eighth Amendment claim. *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (An inmate who claims that his living conditions amount to cruel and unusual punishment must establish that defendants possessed the requisite mental state.).

B. <u>Claim Two (Medical care)</u>

In the second claim, plaintiff complains generally about CCDC's medical care delivery system, the fees associated with system, and the impact the systemic deficiencies complained of have on inmates in the CCDC. Once again, only a few allegations arguably relate to plaintiff personally. Plaintiff maintains that the CCDC is full of MRSA (Methicillin-resistant Staphylococcus aureus), a contagious staph infection, and that inmates are charged to visit the doctor for removal of "staff cores" (staph sores?) and antibiotic prescriptions, although it is the fault of the facility that its inmates are infected in the first place. He further alleges that his wisdom teeth are erupting on top of his molars and his other teeth and that his requests to go to a "dentist (oral surgeon)" have been denied, (Doc. 2, Compl. at 8).

9

Prison officials who are deliberately indifferent to an inmate's serious medical condition violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976. The same objective and subjective components discussed previously must be met to establish a claim for denial of medical care under the Eighth Amendment.

First of all, there is an issue of standing with respect to the MRSA claim. Notably, plaintiff does not allege that he himself contracted MRSA or that he visited a medical care provider for treatment and was charged a fee for the visit. Thus, as discussed, plaintiff has failed to allege any personal injury and lacks standing to assert this claim. *See ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 659 (6th Cir. 2007) (observing that the standing doctrine "applies to every claim sought to be litigated in federal court").

Secondly, factual allegations to support that defendants possessed the requisite mental state are missing with respect to plaintiff's dental claim. Because there is no contention that any named defendant knew about plaintiff's dental distress and because a defendant who does not actually know about a serious medical need cannot consciously disregard a risk of serious harm to an inmate's health or safety, plaintiff has not demonstrated deliberate indifference. *Farmer*, 511 U.S. at 837 (deliberate indifference shown where official is aware of facts from which to infer that a substantial risk of serious harm exists *and* where he actually draws the inference).

Therefore, since the state-of-mind element of an Eighth Amendment claim is missing, plaintiff has failed to state a claim involving his dental problems. *Id*. at 838 ("Our cases

mandate inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment.").

## IV. Conclusion

Because plaintiff has failed to state a claim against defendants, this lawsuit will be **DISMISSED** by separate order. Based on the above discussion, the Court **FINDS** that any appeal taken in this matter would not be taken in good faith, 28 U.S.C. § 1915(a)(3); therefore, should plaintiff file a notice of appeal, he is **DENIED** leave to proceed on appeal *in forma pauperis*.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE